UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY<br><br>*Plaintiff*,<br><br>v.<br><br>JEAN CLAUDE MIGNEAULT, ADMINISTRATOR E/O ESTATE OF ELLE MIGNEAULT; IMRAN IQBAL; MOHAMMAD IQBAL D/B/A SAM'S FOOD STORES<br><br>*Defendants.* | Civil No. 3:21cv0510 (JBA)<br><br>October 31, 2022 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Acceptance Indemnity Insurance Co. moves for summary judgment on the issue of its duty to defend Defendants Imran Iqbal and Mohammed Iqbal.[1] (Pl.'s Mot. for Summ. J. [Doc. # 18].) Plaintiff claims coverage was not triggered because no accident occurred, or that in the alternative, the intentional conduct exclusion applies to the conduct alleged in the Underlying Complaint. (*Id.*) Defendants Imran and Mohammad Iqbal object, (Iqbal Object. to Mot. for Summ. J. [Doc. #29])[2], as does Defendant Jean-Claude Migneault, the plaintiff in the underlying action as estate administrator for the decedent Elle Migneault.

---

[1] The Court granted Plaintiff's motion to bifurcate the case into two phases: the duty to defend, and the duty to indemnify. (*See* Order [Doc. # 17].) This motion for summary judgment concerns only the duty to defend.

[2] Imran and Mohammad Iqbal's objection to the motion for summary judgment appears to be identical to the Plaintiff's motion except for the last three paragraphs. (*See* Iqbal Object. at 10-11.) Their objection argues that there are remaining factual issues that must be resolved by a jury, but otherwise does not meaningfully contest Plaintiff's arguments.

(Def. Migneault's Object. to Mot. for Summ. J. [Doc. # 30].) For the reasons set forth below, the Court denies the motion for summary judgment.

I.      **Undisputed Facts**

The Underlying Complaint was filed by Jean Claude Migneault, administrator of the estate of Elle Migneault, against Imran Iqbal and Mohammad Iqbal d/b/a Sam's Food Store. (Pl.'s Mem. [Doc. # 18-1] at 1.) Migneault alleges that Imran Iqbal "utilized his position as an employee of Sam's Food Mart to procure illegal drugs" and provide them to Elle Migneault, who suffered an overdose and passed away as a result. (*Id.* at 2.) The Migneault Estate brought suit for four counts against Imran Iqbal for his underlying conduct, each in the alternative: negligence/wrongful death; recklessness/wrongful death; willful and wanton misconduct/wrongful death; and civil conspiracy/wrongful death. (Def. Migneault's Mem. Exhibit 1 ¶ 1-10, 17-19).

The Underlying Complaint also brought suit against Mohammad Iqbal in his capacity as operator of Sam's Food Stores, alleging that he was responsible for hiring Imran Iqbal despite Imran's previous arrests for drug-related offenses, including possession of a controlled substance while working at Sam's Food Store and selling tobacco to minors. (*Id.* at ¶ 8-11.) The Underlying Complaint alleges one count of negligence/wrongful death against him for "one or more" of the following actions: failing properly supervise and monitor the store, allowing its employees to purchase and distribute illegal drugs, failing to stop Imran Iqbal from using the store to conduct illegal activities despite the fact that he knew or should have known it was occurring, failing to maintain and install security to deter or prevent illegal activity, or failing to monitor security to identify and prevent illegal activity. (*Id.* at ¶ 15 (a)-(e)). The Underlying Complaint further alleged that Imran and Mohammad Iqbal were engaged in a "civil conspiracy in which Mohammad Iqbal contributed in a meaningful way to

the purchase of the illegal drugs that caused Elle Migneault's overdose and death." (*Id.* ¶ 17-19)

Mohammad Iqbal is the operator of Sam's Food Store; the commercial liability policy insures "Mohammad Iqbal d/b/a Sam's Food Store" against qualifying damage "arising out of . . . [t]he ownership, maintenance, or use of" Sam's Food Store. (Pl.'s Mem. at 3-5.) The insurance policy issued by Plaintiff to Defendant Mohammad Iqbal d/b/a Sam's Food Store provides coverage for "bodily injury" and "property damage" only if they are caused by an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Pl.'s Mem. at 4). The policy contains an exclusion for any bodily injury or property damage "expected or intended from the standpoint of the insured." (*Id.* at 4-5.)

## II.     Legal Standard

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 175 (2d Cir. 1995). "Where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. *Cortes v. MTA N.Y. City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).

**III.    Discussion**

An insurer's duty to defend is "determined by reference to the allegations contained in the [underlying] complaint." *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 687 (2004) (internal quotations and citation omitted). The duty "'does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his [underlying] complaint, stated facts which bring the injury within the coverage.'" *Gen. Ins. Co. of Am. v. Okeke*, 182 Conn. App. 83, 97, 189 A.3d 158, 167 (2018) (quoting *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398, 757 A.2d 1074 (2000)). If an allegation "falls even possibly within the coverage, then the insurance company must defend the insured." *Id.* (citation omitted).

Plaintiff and Defendants agree that whether the insurance company has a duty to defend turns on whether there was an "occurrence" that would trigger coverage under the policy, and whether an exclusion for intentional conduct would apply.[3] (*See* Pl.'s Mem. at 8-12; Def. Migneualt's Mem. [Doc. # 30] at 4-5.) An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions;" accident is not defined. (Pl.'s Mem. at 4.) Various Connecticut courts have defined "accident" as: "'[a]n unintended and unforeseen injurious occurrence;' 'an occurrence for which no one is responsible'; and 'an event of unfortunate character that takes place without one's foresight or expectation," (*id.*)(quoting *Allstate Ins. Co. v. Barron,*

---

[3] Plaintiff and Defendant Migneault agree that "a determination of whether the complaint in the Underlying Action could plausibly lead to a potential 'occurrence' renders any analysis of [the expected or intended injury] exclusion as a basis for a motion for summary judgment superfluous," (Def. Migneault's Mem. at 9), because the "ultimate inquiry for both is whether the act was intentional." (Pl.'s Mem. at 9.) Defendants Imran and Mohammad Iqbal also adopt Plaintiff's analysis on this point. (*See* Def. Imran and Mohammad Iqbal's Object.) As such, the analysis uses both "expected and intended harm" and "accident" interchangeably throughout the memo in assessing whether the harm was intentional.

269 Conn. 394, 408 n. 10 (2004)); "'unintended, unexpected, or unplanned event[s];'" (*id*. at 8) (quoting *Kemper Independence Ins. Co. v. Tarzia*, Civ. No. 3:11–cv–294 (JCH), 2012 WL 2327703, at *2 (D. Conn. June 19, 2012)); "[a] change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." (*Id*.) (*citing Providence Washington Ins. Group v. Albarello*, 784 F. Supp. 950 (D. Conn. 1992)).

This issue, however, rests not on a nuance in any of these definitions, but instead on the two aspects of the "accident" that are being contested: what conduct by each defendant in the underlying action should be evaluated as the potential "accident," and whether an *action* intentionally taken still falls within the definition if the *result* is not expected or intended.

### A. Duty to Defend Imran Iqbal

Plaintiff asserts that the provision of illegal drugs from Imran Iqbal to Elle Migneault was the last event in the causal chain leading up to the injury, and thus should be evaluated as the potential "accident" for Imran Iqbal. (Pl.'s Mot. at 9-10) *citing Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 312 (2001)), The Court accepts this assertion since the Defendants do not contest it. Plaintiff argues that even though one of the Underlying Complaint's counts based on the above-described conduct sounds in negligence, the Court must still examine "the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted," and if so, find that Imran Iqbal's actions are outside the policy coverage regardless of their label. (Pl.'s Mem. at 10) (citing *State Farm Fire & Cas. Co. v. Tully*, 322 Conn. 566, 574 (2016)). Because Imran "knowingly and purposefully provided Elle Migneault with illegal substances," Plaintiff further cites to *Tully* for the proposition that Imran's actions "would be intentional conduct

5

under the law . . . that is so inherently harmful that the resulting damage is unarguably foreseeable, allowing this court to infer the necessary harmful intent." (*Id.* at 10-11.)

*Tully,* Defendant Migneualt argues, is distinguishable based on the "difference between the judicially established inference of harm arising from inappropriate sexual conduct, as in *Tully*, and Imran Iqbal's potentially []mistaken understanding that he was providing one substance when he was actually providing another." (Def. Migneault's Mem. at 7.) In *Tully,* the insurance company brought an action for declaratory judgment against the insured, who in turn made the argument that his conduct in sexually assaulting two children was not intentional because he was intoxicated. *Tully,* 322 Conn. at 569. On these facts alone, the case is clearly distinguishable; intentionally grabbing a young girl's breast and buttocks are not comparable to the provision of drugs, because the harm in the former is instantaneous and undeniably foreseeable, whereas the harms caused by the ingestion of drugs are varied and not necessarily all intended—there is a difference, for example, between providing someone with marijuana or fentanyl. Defendant Migneault relies on this latter argument to contend because "[i]t is also plausible that defendant Imran lqbal did not realize what he was providing to Elle Migneault was lethal or even potentially lethal," her death may still be an accident depending on the facts adduced at trial. (Def. Migneault's Mem. at 7.)

There is no precedent in Connecticut directly addressing whether causing another person's death by providing them with illegal drugs is considered an "accident" for purposes of a liability insurance policy, and courts have varied in their approach to the question of evaluating what kind of negligence may nevertheless be considered intentional rather than an accident. *See Colony Ins. Co. v. Walnut Beach, LLC,* No. CV094011366, 2010 WL 1224364, at *4 (Conn. Super. Ct. Feb. 25, 2010) ("the court observes that there does not appear to be agreement-within Connecticut or the many jurisdictions-as to whether harm caused by a

6

simple act of ordinary negligence allegedly committed by the insured will constitute an 'accident' and therefore an 'occurrence' in any given instance.") Because the question has not yet been resolved by Connecticut courts, this Court must "construe the Policy as it believes the Connecticut Supreme Court would were it to have the occasion to do so." *Providence Washington Ins. Grp. v. Albarello*, 784 F. Supp. 950, 952-53 (D. Conn. 1992).

If the conduct is inherently harmful such that an injury is the natural consequence, some Connecticut courts have held that negligent conduct will not be considered an accident even if the harm was not specifically intended. *Rodrigue v. Patrons Mut. Ins. Co. of Connecticut*, No. HHDCV176080235S, 2018 WL 7107587, at *4 (Conn. Super. Ct. Dec. 28, 2018) (holding that a wrongful assault that caused more harm than expected was not accidental because the actions were "inherently harmful"); *Providence Washington Ins. Grp.* 784 F. Supp. at 953 (holding that in a case where discharge and conversion of stock were intentional, "[t]he damage itself may be 'accidental' in the sense of unintended, but the Policy insures against bodily injury or property damage 'caused by' an accident. Put another way, the Policy's plain language indicates that bodily or property damage is not itself the 'accident' insured against.")

On the other hand, some courts have found negligent actions to be accidents, even when the underlying conduct is intentional, when there is no reason to believe the resulting harm was expected or intended. *See, e.g., Fuentes v. New London Cnty. Mut. Ins. Co.,* No. CV065002176, 2009 WL 2503501, at *3 (Conn. Super. Ct. July 16, 2009) (negligent misrepresentations are not intentional conduct and thus constitute accidents); *Steadfast Ins. Co. v. Purdue Federick Co.*, No. X08CV020191697S, 2006 WL 1149185, at *4 (Conn. Super. Ct. Apr. 11, 2006) (finding that harm caused by Oxycontin was not "expected or intended" harm because "conduct carried out with knowledge of a risk of injury, is not, and has not been recognized legally in New York or Connecticut as, the same as intentionally caused injury");

7

*Vermont Mut. Ins. Co. v. Oquendo-Cabanas*, No. KNL-CV-21-6050928 S, 2022 WL 2902708, at *4 (Conn. Super. Ct. July 22, 2022) ("[a] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly.") (internal quotations and citations omitted).

A distillation of the precedent on this topic leaves the Court with the following principle: death caused by a drug overdose will only be an expected or intended harm if either the provision of drugs is so "inherently harmful" that death by overdose would be a natural consequence, or Imran Iqbal had actual knowledge that the drugs were harmful enough that Elle Migneault might perish as a result of taking them. As Defendant Migneult points out in his supplemental memorandum, at this stage, the Court does not have sufficient facts before it to determine which scenario applies because the "difference between selling something illegal to someone and selling a product to an individual with some degree of knowledge that the product might seriously injure or kill the purchaser" is a significant one that leaves open the possibility that, for example, Imran "did not appreciate the nature of what he was actually selling to Ms. Migneault[.]" (Def. Migneault's Supp. Mem. [Doc. # 37] at 3-4.)[4] Without details on what kind of drugs Imran provided, in what quantity, and under what circumstances, Plaintiff has not met its burden in showing that there are no genuine issues of material fact in dispute.

---

[4] Plaintiff argues that "any ambiguities created by [the underlying plaintiff's] choice of language [in the complaint] must be held against him" under "the doctrine of *contra preferentem*." (Pl.'s Supp. Mem. [Doc. # 38] at 3.) However, *contra preferentem* is a doctrine that applies to *contracts,* not to complaints; it is also applied only as a last resort when all other mechanisms of interpretation have failed and is not appropriate for resolving issues of disputed fact. *See Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir. 1983)(finding that the district court should not have applied the doctrine of *contra preferentem* to resolve a "reasonable conflicting interpretation of a material disputed fact.")

Plaintiff's motion for summary judgment as to Imran Iqbal is denied.

**B. Duty to Defendant Mohammad Iqbal d/b/a Sam's Food Stores**

Plaintiff maintains that its arguments with respect to Imran Iqbal "appl[y] equally to Mohammad Iqbal" because "the intent of the actor causing the event" is the relevant intent for purposes of determining whether an accident occurred. Under that theory, because summary judgment will be denied as to Imran Iqbal, it should necessarily be denied as to Mohammad Iqbal as well. However, Plaintiff's position cannot be reconciled with either the underlying complaint or the case law; as Defendant Migneault argues, the complaint alleges "separate and distinct" misconduct by Mohammad and by Imran part based on their different duties owed. (Def. Migneault's Supp. Mem. at 6.) The complaint alleges "that [Mohammad] negligently allowed Imran Iqbal to continue to be employed when he should have known better." (Def. Migneault Mem. at 6.) This language clearly asserts a theory of negligence, not intentional conduct, and based on the court's reasoning in *Colony Ins. Co. v. Walnut Beach, LLC*, such negligence could constitute an "accident" for purposes of the policy. 49 Conn. L. Rptr. 448, 2010 WL 1224364, at *3 (Conn. Super. Ct. Feb. 25, 2010). There, the insured, Walnut Beach, was sued for negligent infliction of emotion distress; the underlying plaintiff alleged that by choosing to rent property to tenants who were accused of running a bar in a "lewd and dangerous manner," it "knew or should have known" it would cause the underlying plaintiff harm. *Id.* at *2. The court could not definitively conclude at the summary judgment stage whether Walnut Beach "would have expected or intended that the harm suffered by [the underlying plaintiff] would result from its decision to rent the property to the Amoratis tenants[:]"

> "[T]he underlying complaint alleges only that Walnut Beach "knew *or should have known* that its tenant was operating the bar in" such a manner. (Emphasis added.) Certainly, if Walnut Beach did have actual knowledge of the "lewd and dangerous manner" in which the Amoratis tenants were operating the bar

9

when it chose to rent the property to them, then, from the perspective of Walnut Beach, the injuries Urban alleges he suffered may well have been reasonably expected and therefore not the result of an "accident." However, as pled, the allegations of the underlying complaint leave open the probability that Walnut Beach did not have actual knowledge or notice of such events when it chose to rent the property to the Amoratis tenants, and that it instead was merely negligent in that it was not sufficiently vigilant in monitoring what was happening at the property. . . .Thus, under this interpretation and from Walnut Beach's perspective, the harm caused to Urban was the result of "unforeseen, unplanned events," was an "accident," and therefore an "occurrence."

*Id.* at *4. The court in *Walnut Beach* clearly distinguishes the intent of the insured landlord from the intent of its tenants, drawing a line between the two occurrences based on their differing conduct and levels of knowledge. The allegation in this case that Mohammad Iqbal "knew or should have known that Imran Iqbal utilized The Store to conduct illegal activities, including the purchase and distribution of illegal drugs, yet failed to take steps to prevent the same" thus leaves open the possibility that even if Imran Iqbal's conduct was intentional, Mohammad Iqbal did not have actual knowledge that Imran Iqbal was planning to and did provide Elle Migneault with illegal drugs, but instead merely "failed to install and maintain appropriate security at [Sam's Food Store] so as to deter or prevent illegal activity, including the purchase and distribution of illegal drugs" or "failed to properly monitor security at The Store so as to identify and prevent illegal activity, including the purchase and distribution of illegal drugs." (Exhibit 1, ¶ 15(d)-(e)). Because the complaint alleges "facts that *potentially* could fall within the scope of coverage," the "duty to defend is triggered." *DaCruz,* 268 Conn. at 688 (internal citation omitted). Thus, Plaintiff has failed to establish that Mohammad Iqbal's conduct was not accidental as a matter of law.

Plaintiff's motion for summary judgment as to Mohammad Iqbal is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. # 18] is DENIED. Pursuant to the parties' representations in their 26(f) Report, the Court directs the parties to submit a joint proposed scheduling order to the Court within 14 days.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of October 2022